**2025 IL 130351**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130351)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
RALPH HARRIS, Appellee.

*Opinion filed April 24, 2025.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1  At issue in this case is whether the appellate court has jurisdiction to consider the merits of the State's appeal from a Cook County circuit court order vacating

Ralph Harris's three convictions and granting new trials following the appellate court's prior remand from proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). A divided panel of the appellate court held that it lacked jurisdiction because the circuit court's order granting new trials was not a final order or an enumerated interlocutory order that the State was authorized to appeal. 2023 IL App (1st) 221033 (*Harris II*). For the following reasons, we hold that the circuit court's order was a final order resulting from postconviction proceedings, over which the appellate court has jurisdiction.

¶ 2                                                    BACKGROUND

¶ 3        This case concerns Harris's convictions in three separate cases: (1) the 1992 murder and attempted armed robbery of David Ford (No. 95-CR-27596) (Ford case), (2) the 1992 murder and attempted robbery of William Patterson and the attempted murder of James Patterson (No. 95-CR-27598) (Patterson case), and (3) the 1995 aggravated criminal sexual assault and armed robbery of R.T. (No. 95-CR-27600) (R.T. case).

¶ 4        Prior to his trials, Harris filed an omnibus motion to suppress his confessions in his three cases. In his amended motion, he contended that his confessions were involuntarily obtained because of physical and mental coercion. Specifically, he alleged that, at the time of his 1995 interrogation, Detectives Michael McDermott and James Boylan struck him with their fists in his stomach, neck, and head; placed a gun to his head and mouth; and hit him with a phonebook. He further alleged that Detective John Yucaitis told him that he would arrest and charge his girlfriend, who was present at the station, and that after her arrest he would have her children placed with the Department of Children and Family Services.

¶ 5        The State presented the testimony of Detectives McDermott, Boylan, Yucaitis, and Detective John Hamilton. Harris did not testify but presented the testimony of Angela Clark, his girlfriend at the time, and Patrick Blunt, who was in a lineup with him. After hearing the evidence, the circuit court denied the motion to suppress the confessions, finding that they were "freely and voluntarily made."

¶ 6        Harris was convicted in all three cases, and his convictions and sentences were affirmed on direct appeal. *People v. Harris*, 358 Ill. App. 3d 1180 (2005) (table)

(unpublished order under Illinois Supreme Court Rule 23) (Ford case); *People v. Harris*, 358 Ill. App. 3d 1180 (2005) (table) (unpublished order under Illinois Supreme Court Rule 23) (Patterson case); *People v. Harris*, 402 Ill. App. 3d 1186 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23) (R.T. case).

¶ 7        Subsequently, Harris filed postconviction petitions under the Act (725 ILCS 5/122-1 *et. seq.* (West 2022)) in all three of his cases.[1] Relevant here, in his counseled amended postconviction petition, Harris realleged a fifth amendment claim that his pretrial inculpatory statements were the product of police coercion. See U.S. Const., amend. V. He asserted that his convictions should be overturned because "his police coerced involuntary confessions were used to convict him" in violation of both his federal and state due process rights. He alleged that newly discovered evidence of a pattern and practice of police torture at Area 2 of the Chicago Police Department now corroborated his claims that his confessions were obtained through coercion and should have been suppressed. He also alleged that his trial counsel was ineffective for failing to investigate and introduce evidence of McDermott's history of coercion.

¶ 8        After finding that Harris failed to make a substantial showing of a constitutional violation with respect to some of his other claims that are not relevant here, the circuit court advanced the petitions to a third-stage evidentiary hearing on his coerced confession claim and his ineffective assistance claim. The court ordered a combined hearing for all three postconviction petitions.

¶ 9        Harris elected to present no live testimony at the evidentiary hearing. The parties presented documentary evidence including witness testimony from the earlier proceedings, petitioner's prior pleadings, and his new documentary evidence evincing a pattern and practice of police coercion by Area 2 detectives. Postconviction counsel argued that the purpose of the evidentiary hearing was to determine whether there should be a new suppression hearing based on the new

---

[1] We note that, in case No. 95-CR-27600, Harris's petition was a successive postconviction petition, which the circuit court granted leave to file after a motion to reconsider.

exhibits. He made no mention of the ineffective assistance claims and offered no witnesses with respect to that claim.

¶ 10    After the hearing, the circuit court found that the new documentary evidence established that there was a pattern and practice of physical abuse of persons in custody at Area 2, that McDermott was complicit in abuse conducted by John Burge on a custodial suspect, that McDermott actively participated in at least one instance of abuse on another suspect, and that he asserted his fifth amendment privilege against self-incrimination with regard to his actions in another case. However, the court found that, although this new evidence called into question McDermott's testimony at the suppression hearing, the court had to examine his role under "the particular facts of this case."

¶ 11    After considering the totality of the facts related to Harris's custodial interrogation, the court found that Harris had confessed to Hamilton regarding the criminal sexual assault in the R.T. case prior to ever encountering McDermott and that Hamilton had no prior pattern and practice of abuse. With respect to Harris's other confessions, the court found that McDermott's testimony was corroborated by the evidentiary timeline, as well as other witnesses that the court deemed credible. Accordingly, the circuit court denied Harris's postconviction petitions.

¶ 12    On appeal, Harris advanced several arguments to demonstrate that the circuit court erred in denying him postconviction relief. He argued that the circuit court's findings were not supported by the evidence presented or were contradicted by the evidence and that the court applied an incorrect burden of proof. Harris argued that, "[a]t this procedural juncture, petitioner is not asking this [c]ourt for a new trial or even for this court to suppress his purported confessions." He asked the appellate court to reverse the trial court's ruling and remand the case for a new suppression hearing, at which all of the relevant newly discovered evidence could be considered to determine whether his confessions were coerced.

¶ 13    Additionally, Harris requested that, if the cause was remanded for a new hearing, it should be reassigned to a different judge. He argued that the circuit court judge had presided over his original suppression hearing, his trials, and the postconviction evidentiary hearing. At each proceeding, the judge made numerous credibility determinations. Harris maintained that the same credibility issues would be the determinative factor at a new hearing.

¶ 14    The appellate court reversed and remanded for a new suppression hearing. *People v. Harris*, 2021 IL App (1st) 182172, ¶ 64 (*Harris I*). The court stated that the purpose of the evidentiary hearing was only to determine if the outcome of the suppression hearing would have been different if the officers who denied using physical coercion were subject to impeachment based on the new pattern and practice evidence of police abuse and "not to determine the ultimate issue of whether [Harris's] confession was coerced." *Id.* ¶ 50.

¶ 15    The court found that at the third-stage hearing the circuit court had improperly relied on evidence outside the record at the suppression hearing in finding the detective's testimony to be credible and that this was error. *Id.* ¶ 54. Additionally, the court found that the circuit court failed to give due consideration to relevant exhibits related to officer credibility and failed to consider whether other detectives may have displayed a code of silence or whether McDermott's credibility was impaired as a result. *Id.* ¶¶ 55-56.

¶ 16    The court further concluded that petitioner's new evidence "was conclusive enough that the outcome of the suppression hearing likely would have been different if McDermott had been subject to impeachment based on the new evidence." *Id.* ¶ 60 (citing *People v. Patterson*, 192 Ill. 2d 93, 144-45 (2000)). Therefore, the court found the circuit court's "opposite conclusion" to be manifestly erroneous. *Id.* Accordingly, the appellate court reversed the circuit court's dismissal of Harris's petition and remanded for a new suppression hearing. *Id.* ¶ 64.

¶ 17    Additionally, the appellate court assigned the case to a new judge on remand, in "the interests of justice," finding from his rulings that the circuit judge had "expressed a tendency to affirm the officers' credibility while giving little weight to [Harris's] new evidence." *Id.* ¶ 62. The judgment line read, "Reversed and remanded with directions." *Id.* ¶ 65.

¶ 18    On remand, a new circuit judge was assigned, and the circuit court conducted a new suppression hearing. At the outset of the court's oral ruling after the hearing, the court noted that the cases were sent back from the appellate court for the trial court "to act as the finder of fact at an [e]videntiary [h]earing resolving any conflicts in the evidence."

¶ 19    The circuit court denied Harris relief on his coercion claim. After considering all of the testimony and the exhibits, the court found that Harris had a history of making inconsistent statements about the alleged coercion and that his claim was disproven by a myriad of factors, including numerous witnesses whom the court found to have testified credibly that no coercion occurred, medical evaluations, videos, and photographs taken at the time of his confession showing him "relaxed" and uninjured. The court concluded that Harris "was not physically, psychologically or mentally coerced into making statements."

¶ 20    Nevertheless, the court vacated Harris's convictions in all three cases and ordered new trials. Despite its ruling that the confessions were not coerced, were voluntarily given, and therefore were properly admitted at trial, the court addressed the reliability of the confessions. The court found that there was a "possibility" that the new information now known regarding past conduct in other cases "may result in a different outcome if a new trial is granted." The court stated that at a new trial the jury may give the confessions different weight if provided with the new evidence of a history of abuse by the Area 2 detectives in other cases.

¶ 21    The State appealed from the circuit court's order. During the pendency of the appeal, Harris filed a motion to dismiss for lack of appellate jurisdiction. He argued that this was an "unauthorized interlocutory appeal" not permitted by Illinois Supreme Court Rule 604(a) (eff. July 1, 2017). The State responded, maintaining that the appeal was from a final order granting new trials, which resulted from postconviction proceedings. Relying upon *People v. Joyce*, 1 Ill. 2d 225 (1953), the State noted the well-settled rule that it may appeal from a postconviction order granting a new trial. The court took the motion with the case.

¶ 22    A divided panel of the appellate court dismissed the appeal for lack of jurisdiction. 2023 IL App (1st) 221033, ¶ 40. The appellate court found that another panel of the court in *Harris I* had "implicitly" vacated Harris's three convictions on appeal and had granted him new trials. *Id.* ¶¶ 33, 39. The majority held that *Harris I* "intended that Mr. Harris's convictions would be vacated" and new trials would be held "regardless of the outcome of the suppression hearing." *Id.* ¶ 39.

¶ 23    The dissenting justice concluded that the court had jurisdiction to consider the State's appeal on the merits because the proceedings on remand from *Harris I* were a continuation of petitioner's efforts at postconviction relief and the State may

- 6 -

properly appeal from postconviction relief. *Id.* ¶ 45 (Mitchell, P.J., dissenting). He maintained that the focus of the opinion in *Harris I* was on the necessity for a new suppression hearing and no indication was made regarding vacating convictions and ordering new trials. *Id.* ¶ 46. He also noted the unfairness of such a *sub silentio* undertaking, preventing the State from making an informed decision on whether to appeal. *Id.* ¶ 48.

¶ 24    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 25                                    ANALYSIS

¶ 26    On appeal, we are asked to consider whether the appellate court erred in holding that it lacked jurisdiction to address the merits of the State's appeal from the circuit court's order granting Harris new trials. The determination of whether the appellate court had jurisdiction to consider an appeal is a question of law, which we review *de novo*. *People v. Vara*, 2018 IL 121823, ¶ 12.

¶ 27    The State maintains that the circuit court order granting new trials was a final judgment arising from relief in a postconviction proceeding and that, therefore, jurisdiction was proper. Harris maintains that, when the court in *Harris I* reversed the circuit court's denial of his postconviction petition and remanded for a new suppression hearing, the court "disposed" of the postconviction proceedings. Additionally, Harris argues that the circuit court's order on remand granting new trials was not a final order and was not an authorized interlocutory order appealable under Illinois Supreme Court Rule 604(a) (eff. July 1, 2017), which generally governs when the State may appeal outside of proceedings under the Act.

¶ 28    Article VI, section 6, of the Illinois Constitution confers on the appellate court jurisdiction to review final judgments entered by the circuit court. Ill. Const. 1970, art. VI, § 6. An order granting or denying postconviction relief is a final judgment from which the State may appeal. See 725 ILCS 5/122-7 (West 2022) ("Any final judgment entered upon such petition shall be reviewed in a manner pursuant to the rules of the Supreme Court."); Ill. S. Ct. R. 651(a) (eff. July 1, 2017) ("An appeal from a final judgment of the circuit court in any postconviction proceeding shall lie to the Appellate Court in the district in which the circuit court is located."); see also

- 7 -

*Joyce*, 1 Ill. 2d at 227 (stating that an order granting a new trial in postconviction proceeding is a final order from which the State could appeal); *People v. Scott*, 194 Ill. 2d 268, 278-79 (2000) (following *Joyce* and holding that the same rule applied where the court ordered a new sentencing hearing following postconviction proceedings).

¶ 29    The question before us, then, is seemingly simple: What is the nature of the circuit court's order? To determine that, we find it necessary to consider the posture of the case leading up to that order.

¶ 30                         Harris's Postconviction Claim

¶ 31    This case came before the circuit court on Harris's postconviction petitions under the Act (725 ILCS 5/122-1 *et seq.* (West 2022)). The Act provides a means by which a petitioner may challenge his conviction for substantial violations of federal or state constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8. An action seeking postconviction relief is not an appeal from the underlying judgment but, rather, a collateral attack on the judgment. *Id.* To prevail under the Act, a petitioner must prove that he suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 32    Under the procedural framework of the Act, there are three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the circuit court determines whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the petition is not dismissed at the first stage, it advances to the second stage, where the court may appoint counsel, who may amend the petition as necessary, and the State may file a motion to dismiss the petition or answer the petition. *Id.* §§ 122-4, 122-5.

¶ 33    At this pleading stage, the court determines whether the allegations in the petition and any accompanying documentation make a "substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If the petitioner makes the requisite showing, the petitioner is entitled to a third-stage evidentiary hearing. 725 ILCS 5/122-6 (West 2022).

¶ 34    In the context of this controversy, Harris alleged that newly discovered evidence of a pattern and practice of coercion by Area 2 detectives corroborated his previous claims that his confessions were coerced and therefore involuntary, making their introduction at trial a violation of his fifth amendment and due process rights under state and federal constitutional law. *People v. Salamon*, 2022 IL 125722, ¶ 76 (stating that the rule prohibiting involuntary confessions stems from the self-incrimination clause of the fifth amendment and the due process clause of the fourteenth amendment).

¶ 35    A petitioner making this type of claim has multiple hurdles. Normally, a claim regarding the voluntariness of a confession would be subject to the *res judicata* doctrine on collateral review because the claim was either raised or could have been raised on direct review. *Patterson*, 192 Ill. 2d at 139. Nevertheless, we have recognized that, in the interest of fairness, the doctrine of *res judicata* may be relaxed if a petitioner presents substantially new evidence to support that claim, if the new evidence is material and noncumulative, and if, as pleaded, the new evidence is of such a conclusive character that it would probably change the result on retrial. *Id.*

¶ 36    Notably, however, unlike a petitioner with an actual innocence claim, which asserts that the new evidence itself is so conclusive that it would probably change the result upon retrial, a petitioner with a coerced confession claim simply attempts to bolster that claim with newly discovered evidence. See *People v. Washington*, 171 Ill. 2d 475, 479 (1996).

¶ 37    Thus, at the second stage of postconviction proceedings, a petitioner with a coerced confession claim must sufficiently allege that the pattern and practice evidence is new, material, and not cumulative. Further, the petitioner must sufficiently allege that the new evidence is so conclusive that the outcome of his suppression hearing would likely have differed because the new evidence would corroborate his constitutional claim that the confession was involuntary and subject to suppression.

¶ 38    The substantive standard for relief for a claim of involuntariness is well settled. The voluntariness of a confession depends upon the totality of the circumstances, and no single factor is dispositive. *People v. Morgan*, 197 Ill. 2d 404, 437 (2001). The constitutional test of voluntariness is whether the statement was made freely,

voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he confessed. *Id.* Involuntary statements obtained through physical coercion are inadmissible at trial. *People v. Wrice*, 2012 IL 111860, ¶ 84.

¶ 39    A petitioner who carries his burden at the second stage is entitled to a third-stage evidentiary hearing. "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven at an evidentiary hearing, would entitle petitioner to relief.*" (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 40    The ultimate hurdle for the petitioner is then the third-stage evidentiary hearing, where the circuit court serves as the factfinder, determining witness credibility, deciding the weight to be given testimony and evidence, and resolving any evidentiary conflicts. *Id.* ¶ 34. "At this stage, the circuit court must determine whether the evidence introduced demonstrates that the petitioner is, in fact, entitled to relief." *Id.* The petitioner has the burden to ultimately prove by a preponderance of the evidence that his constitutional rights were violated, warranting a new trial. *People v. Coleman*, 2013 IL 113307, ¶ 92.

¶ 41    Essentially, a third-stage evidentiary hearing on a coerced confession claim is substantially similar to a pretrial suppression hearing. The same considerations are addressed but litigated in a different procedural posture. The court evaluates whether the confessions should have been suppressed based on the totality of the circumstances, considering the petitioner's new evidence, along with the evidence presented at the original proceedings as well as any new evidence presented by the State. And unlike a pretrial suppression hearing where the State bears the ultimate burden of proof by a preponderance of the evidence (*People v. Caballero*, 102 Ill. 2d 23, 33 (1984)), on collateral review, the petitioner bears the burden of proof by a preponderance of the evidence (*Coleman*, 2013 IL 113307, ¶ 92). The preponderance of the evidence is evidence that renders a fact more likely than not. *People v. Urdiales*, 225 Ill. 2d 354, 430 (2007). Thus, a petitioner must establish that, based on the totality of the circumstances, it is more likely than not that the result of the suppression hearing would have been different had the new evidence

been admitted, making the introduction of the confession at trial a violation of his constitutional rights.

¶ 42     In applying this standard, if the court finds that a confession should have been suppressed and is not subject to harmless error, the petitioner is entitled to a new trial. See *Wrice*, 2012 IL 111860, ¶ 84 ("use of a defendant's physically coerced confession as substantive evidence of his guilt is never harmless error"). But see *Salamon*, 2022 IL 125722, ¶ 122 (an involuntary statement's introduction at trial may otherwise be subject to harmless error). See also 725 ILCS 5/122-6 (West 2022) ("If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings ***.").

¶ 43     In this case, Harris's coercion claim proceeded to a third-stage hearing, at which the trial court determined, after considering the evidence presented, that his coerced confession claims were meritless. Accordingly, his petition for relief was denied, and he appealed.

¶ 44     In reviewing the third-stage proceedings in the context of a coerced confession claim, the appellate court could have reached several dispositions. After a third-stage denial, the appellate court could affirm the circuit court's order, finding that it was not manifestly erroneous. *Coleman*, 2013 IL 113307, ¶ 98 (addressing the standard of review at a third-stage proceeding). Otherwise, the court could find that the circuit court's ruling was manifestly erroneous, necessitating the vacatur of the convictions and a remand for a new trial. See 725 ILCS 5/122-6 (2022). Alternatively, the court could find that the circuit court made certain errors during the evidentiary hearing, warranting a remand for a new third-stage hearing under the Act. See, *e.g.*, *In re D.T.*, 212 Ill. 2d 347, 366-67 (2004) (holding that, where the trial court adjudged the evidence by an improper standard of proof, the proper remedy was to remand for a new hearing); *People v. Robinson*, 2021 IL App (1st) 171371, ¶ 58 (remanding for a new third-stage evidentiary hearing where evidence was considered under an improper standard of proof).

¶ 45                    The Appellate Court's Mandate in *Harris I*

¶ 46     Against the proper framework of the Act and in the specific context of Harris's postconviction coerced confession claims, we now examine the appellate court's

- 11 -

holding in *Harris II* that the court lacked jurisdiction over the State's appeal. In its attempt to "clarify" the mandate in *Harris I*, the court interpreted the mandate as "implicitly" granting postconviction relief by vacating petitioner's convictions and granting new trials after a third-stage evidentiary hearing. 2023 IL App (1st) 221033, ¶ 31. Therefore, the court held that the circuit court proceedings on remand were not a continuation of the postconviction proceedings, from which the State could now appeal. *Id.* ¶¶ 39-40. We disagree.

¶ 47        It is well settled that, where an appellate court's mandate remands a case with specific directions that are " 'precise and unambiguous' " to do some act, the circuit court must follow the direction of the mandate. *People v. Brown*, 2022 IL 127201, ¶ 21 (quoting *Fisher v. Burks*, 285 Ill. 290, 293 (1918)). The appellate court's mandate in *Harris I* was "precise and unambiguous." The mandate in *Harris I*, by its plain language, "reverse[d] the circuit court's dismissal of defendant's petition after an evidentiary hearing and remand[ed] for a new suppression hearing." *Harris I*, 2021 IL App (1st) 182172, ¶ 64. The mandate in *Harris I* did not vacate petitioner's convictions and remand for new trials. Nor did it remand with directions for the circuit court to do so.

¶ 48        The court in *Harris I* erroneously found that, "[a]t the evidentiary hearing conducted below, the circuit court's purpose was not to determine the ultimate issue of whether defendant's confession was coerced." *Id.* ¶ 50. Instead, the court believed Harris was entitled to more process in the form of a new suppression hearing because the "new evidence was conclusive enough that the outcome of the suppression hearing likely would have been different if McDermott had been subject to impeachment based on the new evidence." *Id.* ¶ 60 (citing *Patterson*, 192 Ill. 2d at 144-45). This procedural process was error.

¶ 49        As we explained, postconviction proceedings have only *three* stages. The *Harris I* court essentially employed an extra step in the process by remanding for a new suppression hearing. There is no fourth stage of proceedings provided for under the Act. Such a directive is inconsistent with the three-stage proceedings outlined under the Act. As explained, the third-stage proceeding acts as a *de facto* suppression hearing where a petitioner has the burden to prove a substantial deprivation of his constitutional rights.

¶ 50 We recognize that some other appellate court decisions have remanded for a new "suppression" hearing after reversing a third-stage evidentiary hearing. See, *e.g.*, *People v. Galvan*, 2019 IL App (1st) 170150, ¶ 74 (reversing and remanding after a third-stage hearing for a new suppression hearing and, if necessary, a new trial); *People v. Whirl*, 2015 IL App (1st) 111483, ¶ 113 (vacating guilty plea and remanding for a new suppression hearing and, if necessary, a new trial). That language creates confusion. To the extent that those cases suggest that there is a fourth stage of proceedings under the Act, we overrule those cases.

¶ 51 Furthermore, to the extent that those cases, including *Harris I*, have relied on *Patterson* for the appropriate substantive standard for relief at a third-stage evidentiary hearing, we find that those cases have misconstrued *Patterson*. In *Patterson*, 192 Ill. 2d at 139, the court considered a second-stage postconviction petition where the petitioner claimed he had new evidence supporting his claim that his confession was the result of physical coercion. The court considered the "newness" of his new evidence, its relevancy and admissibility, and whether the new evidence, as pleaded, would likely change the result on retrial. *Id.* The court found that the petitioner had presented sufficient evidence at the pleading stage to entitle him to a hearing. *Id.* at 140-45. The court then noted that an evidentiary hearing would "allow the trial court to determine whether (1) any of the officers who interrogated defendant may have participated in systemic and methodical interrogation abuse present at Area 2 and (2) those officers' credibility at the suppression hearing might have been impeached as a result." *Id.* at 145.

¶ 52 We emphasize that, although these two factors are relevant considerations in the circuit court's ultimate determination of whether a confession should have been suppressed, the fact that the evidence would have impeached the officer's credibility would not alone be a sufficient basis to grant a new trial. It is not enough to merely show that the new evidence would have impeached the credibility of the interrogating detectives. Rather, as explained, the ultimate question on a coerced confession claim is whether it was involuntary under the totality of the circumstances.

¶ 53 Nevertheless, in this case, in remanding for a fourth stage of proceedings, both the parties and the court understood that the matter was remanded for continued proceedings on Harris's coerced confession claim and that the appellate court had

- 13 -

not vacated his convictions and remanded for new trials. The record reflects that the immediate relief Harris sought in his appellate brief in *Harris I* was a new suppression hearing where he could ultimately prove a substantial violation of his constitutional rights. Additionally, on remand, the circuit court recognized that the appellate court had "not instructed [it] to do a new trial."

¶ 54 Accordingly, we hold that *Harris II* erred in holding that the mandate in *Harris I* vacated Harris's convictions and ordered new trials. Rather, the mandate remanded to the circuit court for additional process on his coerced confession claim. The proceedings on remand were a continuation of the postconviction proceedings, which resulted in a final order from which the State could appeal. We make no judgment about the propriety of the circuit court's order or the merits of the State's contentions on appeal.

¶ 55 CONCLUSION

¶ 56 For the foregoing reasons, we reverse the judgment of the appellate court and remand to the appellate court for consideration of the State's appeal.

¶ 57 Appellate court judgment reversed and remanded.

¶ 58 JUSTICE O'BRIEN, dissenting:

¶ 59 The majority finds that the remand proceedings from the mandate of *People v. Harris*, 2021 IL App (1st) 182172 (*Harris I*), were a mere continuation of the postconviction proceedings, such that the circuit court's order vacating defendant's convictions and sentences constituted a final and appealable order granting postconviction relief. *Supra* ¶ 54. The majority therefore concludes that the appellate court had jurisdiction to consider the State's appeal. *Supra* ¶ 54. I disagree. I would find that *Harris I* constituted an order granting postconviction relief and the remand proceedings were therefore the beginning of new pretrial proceedings. Consequently, I would hold that the appellate court majority correctly concluded that it lacked jurisdiction to entertain the State's appeal in *Harris II*, 2023 IL App (1st) 221033. See Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). Rule 604(a)(1)

- 14 -

lists the types of adverse rulings that the State may appeal. *Id.* The *Harris II* order before us today does not fall within the ambit of Rule 604(a)(1).

¶ 60 Like the majority, I begin by examining *Harris I*, which involved an appeal from the denial of a postconviction petition following a third-stage evidentiary hearing. The *Harris I* court recognized that the sole issue at the hearing was "whether the outcome of defendant's suppression hearing would have been different." *Harris I*, 2021 IL App (1st) 182172, ¶ 50. As the majority in this case correctly notes, to be entitled to postconviction relief following a third-stage hearing, "a petitioner must establish that, based on the totality of the circumstances, it is more likely than not that the result of the suppression hearing would have been different had the new evidence been admitted, making the introduction of the confession at trial a violation of his constitutional rights." *Supra* ¶ 41. After reviewing the evidence presented, the *Harris I* court made this exact finding, concluding that "defendant's new evidence was of such character that the outcome of the suppression hearing would likely have changed if McDermott's testimony, and the testimony of other officers, had been subject to impeachment." *Id.* ¶ 57; see *id.* ¶ 60. Having satisfied the universally accepted standard entitling a defendant to postconviction relief, the appellate court remanded for a new suppression hearing. *Id.* ¶ 64. At that point, the merits of the postconviction claim had been determined in defendant's favor, and the postconviction proceedings concluded. On remand from *Harris I*, defendant's criminal case started anew.

¶ 61 The above interpretation is consistent with how coerced confession claims under the fifth amendment are resolved. See U.S. Const., amend. V. Defendant must first prove the claim at a third-stage hearing by a preponderance of the evidence. *People v. Coleman*, 2013 IL 113307, ¶ 92. If defendant succeeds, then he is entitled to postconviction relief. 725 ILCS 5/122-6 (West 2022). In this scenario postconviction relief includes two things: (1) vacatur of defendant's convictions and sentences and (2) a new suppression hearing. *Id.* The *Harris I* mandate only expressly mentioned a new suppression hearing. Nevertheless, by remanding for a new suppression hearing, *Harris I* granted postconviction relief because the circuit court would otherwise lack jurisdiction to revisit the motion to suppress on remand. Simply put, the circuit court could not hold a new suppression hearing and a new trial unless, and until, postconviction relief had been granted. See generally *People v. Bailey*, 2014 IL 115459, ¶ 14 (generally the circuit court loses jurisdiction over

a criminal case 30 days after the entry of a final judgment if no postjudgment motions are filed); see also *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 23; 725 ILCS 5/122-6 (West 2022) ("If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, conditions of pretrial release or discharge as may be necessary and proper."). The majority's alternative conclusion that *Harris I* merely constituted a continuation of the postconviction proceedings ignores this jurisdictional reality.

¶ 62    Given that *Harris I* expressly granted postconviction relief when it held that defendant satisfied the universally accepted standard entitling him to such relief, it must also be read to have vacated defendant's convictions and sentences. It is the granting of this relief in *Harris I* that acted to revest the circuit court with jurisdiction to begin criminal proceedings anew. The notion that defendant's convictions and sentences were to remain in effect, after the *Harris I* court's award of postconviction relief, defies logic. Such a position prompts the question: What is the purpose of the new suppression hearing if defendant's convictions and sentences are to remain in effect? The *Harris I* court held that defendant satisfied his burden of proving a substantial constitutional violation at third-stage postconviction proceedings. *Harris I*, 2021 IL App (1st) 182172, ¶ 60. The State did not file a petition for leave to appeal in *Harris I*. With these facts in mind, I would note that this court has expressly held: "The use of a defendant's coerced confession as substantive evidence of his guilt is never harmless error, and the cause must therefore be remanded for a new trial." *People v. Wilson*, 116 Ill. 2d 29, 41-42 (1987). I would also note that, in his petitions for postconviction relief, defendant expressly asked that the circuit court "vacate his conviction and sentence and remand [his] case for leave to pursue a motion to suppress his confession as involuntary, or in the alternative *** that it vacate his conviction and sentence and remand the case for a new trial." *Harris I* reversed the circuit court's denial of this relief, not merely defendant's request for a new suppression hearing.

¶ 63    Upon remand, the circuit court denied defendant's motion to suppress but ordered new trials because defendant's defense "was significantly and unfairly prejudiced by the lack of information and knowledge of past misconduct attributed to a number of the detectives involved in the interrogation of Mr. Harris."

Significantly, it is this order that the State appealed from in *Harris II*. Orders from which the State may appeal, however, are narrow and limited.

"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; suppressing evidence; from an order imposing conditions of pretrial release; from an order denying a petition to deny pretrial release; or from an order denying a petition to revoke pretrial release." Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017).

Notably, Rule 604(a) only permits the State to appeal from an order *granting* a motion to suppress. As such, the order denying defendant's motion to suppress does not fall within the category of orders from which the State may appeal. Our court has recognized that the State may appeal an order granting postconviction relief (*People v. Scott*, 194 Ill. 2d 268, 278-79 (2000)), but as discussed above, the order being appealed from is an order denying a motion to suppress. Consequently, the State is not appealing from an order that is recognized as one from which the State may appeal. See Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). Accordingly, the *Harris II* court correctly determined that it lacked jurisdiction to consider the State's appeal.

¶ 64    Despite this jurisdictional reality, the majority curiously returns to the *Harris I* mandate and seeks to inject error in said mandate by relying on the appellate court's failure to expressly order the vacatur of defendant's convictions and sentences. Based on this, the majority assumes *Harris I* intended to remand for further postconviction proceedings—despite the majority's acknowledgment that the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) does not include a fourth-stage hearing. *Supra* ¶¶ 48-49. No Illinois precedent supports this assumption. In fact, Illinois law requires us to presume the exact opposite. See generally *People v. Blair*, 215 Ill. 2d 427, 449 (2005) (presuming Illinois judges know and follow the law unless the record demonstrates otherwise). There is simply no basis in law, logic, or the record before us that supports the majority's assumption that the *Harris I* court employed a procedure that, even the State

acknowledges, "is not how Fifth Amendment claims generally should be resolved in postconviction proceedings."

¶ 65 The majority's conclusion only adds further confusion to the procedural posture of this case. If the appellate court has jurisdiction over the State's appeal, then what is the *Harris II* court reviewing? Defendant's motion to suppress was denied. Does the State now have a second opportunity to challenge the merits of defendant's postconviction claim on appeal? The doctrine of *res judicata*, forfeiture, and waiver apply with equal force to the State as they do to a defendant seeking to challenge the voluntariness of his confession. *People v. McKown*, 236 Ill. 2d 278, 308 (2010) (citing *People v. Williams*, 193 Ill. 2d 306, 347 (2000)). *Harris I* decided the merits of defendant's postconviction claim. The State could have challenged the appellate court's decision in *Harris I*, yet it chose not to file a petition for leave to appeal from that decision. Accordingly, the State is now barred from relitigating the merits of defendant's postconviction claim.

¶ 66 In light of the above, I would affirm the appellate court's judgment, which held that it lacked jurisdiction to consider the State's appeal.

¶ 67 JUSTICE NEVILLE took no part in the consideration or decision of this case.