2025 IL App (1st) 232180-U

No. 1-23-2180

Order filed June 17, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 17 CR 1390 |
| | ) | 17 CR 1748 |
| | ) | 17 CR 7038 (01) |
| | ) | |
| KEITH LUCIOUS, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*: Circuit court's order denying defendant's postconviction petition following an evidentiary hearing is affirmed when defendant failed to establish that counsel ignored his instruction to file a motion to withdraw his guilty plea.

¶ 2     Upon a negotiated guilty plea, defendant Keith Lucious was convicted of armed robbery and attempted aggravated battery with a firearm and sentenced to concurrent prison terms of 20 years and 8 years, respectively. Defendant appeals from an order of the circuit court denying his

petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) following an evidentiary hearing. He contends that the court erred in denying his petition because he stated a claim that plea counsel was ineffective where she failed to file a motion to withdraw his guilty plea as he instructed and thus deprived him of a direct appeal of his conviction. We affirm.

¶ 3        The plea arose from charges in three cases. In case 17 CR 1390, defendant was charged with the attempted first degree murder and aggravated battery of Christopher Thomas with a firearm on or about December 17, 2016. In case 17 CR 1748, defendant was charged with aggravated unlawful use of a weapon (AUUW) for allegedly keeping a "handgun, pistol, or revolver" in a vehicle on or about January 5, 2017. In case 17 CR 7038, defendant and Joseph Burrell were charged with the attempted first degree murder of Gregory Petty and Willie Washington with a firearm, aggravated battery of Petty with a firearm, armed robbery of Washington with a firearm, and aggravated discharge of a firearm on or about December 2, 2016.

¶ 4        On January 30, 2020, by agreement, armed robbery with a firearm in case 17 CR 7038 was amended to armed robbery with a deadly weapon, and aggravated battery with a firearm in case 17 CR 1390 was amended to attempted aggravated battery with a firearm. Defendant pled guilty to the reduced armed robbery and attempted aggravated battery with a firearm charges. All other charges against defendant in the three cases were nol prossed, except that AUUW in case 17 CR 1748 would be used in aggravation at sentencing. For each of the two charges to which defendant pled guilty, the court admonished him of the sentencing range, including that "[a]ny time in the Illinois Department of Corrections would be followed by *** mandatory supervised release."

¶ 5        The State recited the factual bases for defendant's plea for each of the two charges to which defendant pled guilty and for AUUW in case 17 CR 1748, to which defense counsel stipulated.

Defendant was then asked if "the facts that you just heard with regard to the case 17 CR 7038 ***
are the facts that occurred on that date," and he replied "Yeah." Defense counsel amended the
factual basis in case 17 CR 7038, clarifying that Burrell had a firearm during the offense and
defendant was being held accountable therefor, and the State and defendant concurred that was
what the evidence would show and to which defendant was "swearing to be true."

¶ 6    In mitigation at sentencing, plea counsel told the court that defendant completed alternative
high school and "got his diploma" while in jail, with mostly good grades and teachers reporting
that he was attentive in class, came to class prepared, and was helpful to other students. Defendant
requested programming credit against his sentence. Defendant was sentenced to concurrent prison
terms of 20 years for armed robbery and 8 years for attempted aggravated battery, to be served at
50 percent with three years' mandatory supervised release (MSR) "[w]hen you are released" from
prison. He received a total of 1367 days' credit: 1125 days for presentencing detention, and 242
days of programming credit.

¶ 7    The court admonished defendant of his right to appeal, notifying him that he must first file
a motion to withdraw his guilty plea stating all his grounds for withdrawal, that granting his motion
would require setting aside the plea and scheduling a trial, that the trial could include charges set
aside by the plea agreement, and only if his motion was denied could he file a written notice of
appeal. Defendant said he understood.

¶ 8    Defendant did not file a motion to withdraw his plea or a direct appeal.

¶ 9    On December 7, 2020, defendant filed the *pro se* postconviction petition now at issue. He
claimed ineffective assistance of plea counsel for ignoring his letter of February 6, 2020,
requesting that she file a motion to withdraw his plea because his sentence was "simply too long,"
his MSR term should be incorporated into his prison sentence, and the factual basis of his plea was

incorrect. He requested that, if the motion to withdraw was denied, counsel file an appeal. The petition named all three cases, and did not specify which plea or sentence. Attached to the petition was defendant's affidavit that he sent a letter to plea counsel on February 6, 2020, to the aforesaid effect but referencing "pleas" and "sentences." Neither the petition nor attached affidavit specified or described the alleged error or errors in the factual bases for the pleas.

¶ 10   The court docketed the petition for further proceedings and appointed counsel for defendant.

¶ 11   On November 28, 2022, and again on March 9, 2023, counsel filed a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017) that he consulted defendant by mail about his claims, examined the record, and adopted defendant's *pro se* petition.

¶ 12   On May 4, 2023, the State filed an answer generally denying defendant's allegations and maintaining that he could not meet his burden of establishing a constitutional claim.

¶ 13   On May 19, 2023, defendant filed a *pro se* motion to correct the mittimus, seeking additional credit against his prison sentence. He sought 726 days' credit for educational programming in jail, 90 days for completing his general equivalency degree, 245 days for completing four college classes, and an unexplained "162 days toward his sentence."

¶ 14   The court scheduled an evidentiary hearing on the petition and the motion hearing on correcting the mittimus for July 17, 2023.

¶ 15   At the evidentiary hearing, plea counsel Caitlin Patterson testified that, while charges were pending, defendant wrote to her "frequently with ideas and questions he had about the case" and she visited him in jail. Patterson "did receive letters from [defendant] after the plea." One letter, sent on February 15, 2020, was entered into evidence as defendant's exhibit, without objection, and read into the record by Patterson. Patterson received this letter asking her to look into a

programming credit issue, and she did not interpret the letter as asking her to withdraw his guilty plea. She had "a chance to look at [her] correspondence envelope" and did "not remember any other letters in February 2020," though there "may have been a letter in March of 2020."

¶ 16    Defendant's letter exhibit is in the record, and it is consistent with Patterson's testimony: after noting that he was "still at NRC Statesville," defendant mentions credit for "my school program" being incorrect and asks Patterson to "fix[] this paper work" but does not mention withdrawing his plea or ask her to file a motion to withdraw plea.

¶ 17    On cross-examination, Patterson testified that she believed defendant's sentence was a "good deal" in light of his three cases and the sentencing ranges. When asked if she received a letter requesting that she file a motion to withdraw defendant's plea, she replied, "I did not receive a letter asking that I withdraw the plea," and she would have filed a motion to withdraw plea if she had received such a letter. Patterson did not recall having a telephone conversation with defendant after the plea, but she would have filed a motion to withdraw his plea if he had requested it in a telephone call.

¶ 18    On redirect examination, Patterson testified that she discussed MSR with defendant "because it's part of the sentence," though she could not recall exactly what she said. She recalled meeting defendant in jail after his plea but could not recall "the specifics."

¶ 19    Upon the court's examination, Patterson testified that she would have filed a motion to withdraw defendant's plea if he had requested it during a post-plea jail visit.

¶ 20    Defendant testified. When asked about his conversation with Patterson regarding his plea agreement, he replied:

"First, when I got done in Statesville I figured I got my paper and all my time wrong. And then I wrote her a letter and let her know that all my time was wrong. Then when I got – I

got to Pickneyville when I got in the law library I got a call from her. I got a call from her in Pickneyville. She said she was going to look into it for me. That's when I end up in a pleading letter. I didn't hear nothing so I end up putting in a postconviction."

Defendant acknowledged the letter entered into evidence, but denied that it was the only letter he sent Patterson in February 2020. He explained that he wanted her to look into his sentence credit issue and was not at that time seeking more than a sentence correction. When he did not hear back from her, he wrote another letter asking her to withdraw his plea. In that letter, defendant told Patterson that his sentence was too long and should include his MSR term. Defendant testified that he sent the letter asking to withdraw his plea before he sent the letter entered into evidence.

¶ 21    On August 23, 2023, the circuit court denied defendant postconviction relief and issued a corrected mittimus.

¶ 22    Regarding the postconviction petition, the court found that defendant did not prove by a preponderance of the evidence that he requested that Patterson withdraw his guilty plea. Noting that defendant produced a single letter of February 15, 2020, in support of his claim, the court found that the letter did not mention any intention to withdraw his plea but only an issue with his sentencing credit. While defendant testified that he sent another letter asking plea counsel to file a motion to withdraw his plea, he "could not provide proof that an additional letter was sent or what the contents of that letter were." The court found that, without proof that defendant conveyed to counsel his request to withdraw his plea, he could not satisfy the first prong of ineffective assistance: that counsel's performance was objectively unreasonable.

¶ 23    The court also found that defendant was not prejudiced by the absence of a motion to withdraw his plea, and thus could not satisfy the second prong of ineffective assistance, because none of the reasons he gave for withdrawing his plea merited withdrawal. Dissatisfaction with the

length of one's sentence is not a valid basis for withdrawing a guilty plea. Defendant's challenge to the factual basis of his guilty plea was meritless due to the lower standard of proof for factual bases and because he personally affirmed at the time of his plea that the factual basis stated on the record was true. Finally, the court found a challenge to defendant's MSR term meritless because he failed to show that he was not properly admonished at the time of his plea that his MSR term was in addition to and would follow his prison term.

¶ 24     As to defendant's motion for a corrected mittimus, the court stated that its "intention was to grant [defendant] credit for 1125 days in actual custody as well as credit for 483 days of educational programming," but the latter "is only given half credit, so [defendant's] educational credit is 242 days." The court determined that the credit on the "original mittimus might have been misleading" and issued a corrected mittimus *nunc pro tunc* to January 30, 2020, "in an effort to clarify." However, the original mittimus and corrected mittimus both state that defendant would receive aggregate credit of 1367 days.

¶ 25     On appeal, defendant contends that the circuit court erred in denying his postconviction petition because he stated a claim that plea counsel was ineffective for failing to file a motion to withdraw his guilty pleas as he instructed and thus deprived him of a direct appeal of his conviction.

¶ 26     There are three stages of postconviction proceedings under the Act. *People v. Harris*, 2025 IL 130351, ¶ 32. At the first stage, the circuit court may summarily dismiss the postconviction petition within 90 days of filing if it is frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2020). A petition not summarily dismissed advances to the second stage, where a defendant must make a substantial showing of a constitutional violation. *Harris*, 2025 IL 130351, ¶ 39. The

court may appoint counsel, who may amend the petition as necessary, and the State may file a motion to dismiss the petition or answer the petition. 725 ILCS 5/122-4, 122-5 (West 2020).

¶ 27    A petition not dismissed at the second stage proceeds, as here, to the third-stage, an evidentiary hearing "where the circuit court serves as the factfinder, determining witness credibility, deciding the weight to be given testimony and evidence, and resolving any evidentiary conflicts." *Harris*, 2025 IL 130351, ¶¶ 39-40. The defendant has the burden to ultimately prove by a preponderance of the evidence that his or her constitutional rights were violated. *Id.* ¶ 40. The denial of postconviction relief following a hearing where the circuit court engaged in factfinding and making credibility determinations is reversed if the denial was manifestly erroneous. *Id.* ¶ 44; *People v. Caldwell*, 2023 IL App (1st) 221586, ¶ 17.

¶ 28    A claim not raised in a postconviction petition is waived. 725 ILCS 5/122-3 (West 2020). This court does not have the authority to excuse waiver under the Act. *People v. Allen*, 2019 IL App (1st) 162985, ¶ 37.

¶ 29    Here, defendant claimed ineffective assistance of plea counsel. A claim of ineffective assistance of counsel has two prongs: (1) counsel was defective by acting, or failing to act, in an objectively unreasonable manner; and (2) defendant was prejudiced thereby; that is, there is a reasonable probability that the outcome of proceedings would have been different absent counsel's defective act or omission. *People v. Yankaway*, 2025 IL 130207, ¶ 61-62. Generally, a defendant has the burden of proving both prongs of ineffective assistance, so a claim is not meritorious if either prong is not proven. *Id.*

¶ 30    Defendant claims that the third stage hearing testimony established that plea counsel failed to file a motion to withdraw his guilty plea as he instructed. Patterson testified firmly that she did not receive a letter from defendant asking her to withdraw his plea, and defendant testified that he

sent her such a letter. The one letter defendant submitted clearly does not mention withdrawing defendant's plea or ask Patterson to file a motion to do so. Therefore, the central question in this case, whether defendant asked or told Patterson to file a motion to withdraw his plea, came down to the credibility of the hearing witnesses, Patterson and defendant.

¶ 31 As noted, when the circuit court holds an evidentiary hearing with witness credibility determinations, we reverse only if the decision was manifestly erroneous. *Harris*, 2025 IL 130351, ¶¶ 40, 44; *Caldwell*, 2023 IL App (1st) 221586, ¶ 17. On this record, we do not find the circuit court's decision to accept Patterson's testimony over defendant's testimony to be manifestly erroneous. Defendant having failed to prove that he instructed Patterson to withdraw his plea, we cannot find that Patterson acted objectively unreasonably by not filing a motion to withdraw defendant's plea. Absent the first prong of ineffective assistance, we conclude that defendant has failed to establish plea counsel's ineffective assistance.

¶ 32 Against such a conclusion, defendant argues that he repeatedly and consistently asserted he sent such a letter while Patterson was unable to remember whether she received such a letter, so that he proved by a preponderance of the evidence that she denied him his right to a direct appeal. However, the record does not bear out this characterization. While Patterson testified at one point that she did "not remember any other letters in February 2020" though she may have received a letter in March 2020, she also testified "I did not receive a letter asking that I withdraw the plea." She testified clearly that she would have filed a motion to withdraw defendant's plea had he requested it by any means, whether in a letter, telephone call, or a jail visit.

¶ 33 The issue of letters sent or received in February takes on particular significance because defendant testified that he sent the letter asking Patterson to withdraw his plea before the letter asking her to merely correct his sentencing credit. However, he testified a short time earlier to the

exact opposite effect: that he sent the letter in the record about credit and then, when Patterson did not reply, he sent a letter asking her to withdraw his plea. We find it reasonable for the circuit court to discount defendant's self-contradictory account.

¶ 34    Defendant also argues that counsel's duty to consult a criminal defendant about an appeal, recognized in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), extends to guilty plea cases so that Patterson acted objectively unreasonably by not consulting with him about his right to appeal and he does not have to show prejudice because it is presumed from counsel's inaction. Moreover, he contends that this claim is sufficiently similar to the claim in his postconviction petition that he has not forfeited it by raising it for the first time on appeal. We do not find the claim in defendant's petition that counsel was ineffective for failing to follow defendant's instruction to withdraw his plea at all similar to the instant claim that counsel was obligated to discuss defendant's postplea appeal rights with him *sua sponte* even absent a request. The claim is therefore waived, and we cannot excuse that waiver. 725 ILCS 5/122-3 (West 2020); *Allen*, 2019 IL App (1st) 162985, ¶ 37.

¶ 35    Accordingly, for the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.