NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220141-U

NO. 4-22-0141

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| JASON L. HILLS, | ) | No. 18CF450 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed and remanded, holding the trial court erred in summarily dismissing defendant's postconviction petition because defendant stated the gist of a claim that his trial counsel was ineffective for failing to investigate the State's expert's opinion that the victim suffered from post-traumatic stress disorder.

¶ 2    Defendant, Jason L. Hills, appeals the summary dismissal of his postconviction petition at the first stage of postconviction proceedings. Defendant contends the trial court erred in finding that the five claims of ineffective assistance of trial counsel raised in his petition should have been raised on direct appeal and were consequently forfeited. Defendant further argues he stated the gist of a constitutional claim of ineffective assistance of counsel with respect to all five claims asserted in the petition. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was charged with two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2016)) in that he placed his penis in J.A.W.'s vagina and anus while knowing she was unable to give knowing consent.

¶ 5 At trial, J.A.W. testified that on the night of the incident, she allowed defendant to come to her residence to use her shower. She had socialized with defendant in the past. J.A.W. told defendant she was having sciatic nerve problems, and he brought her two pills, which he indicated were ibuprofen and tramadol. She took both pills. J.A.W. testified she also took three "little sip[s]" of whiskey defendant had brought. J.A.W. and defendant sat on the couch and talked for a while, and J.A.W. became tired. J.A.W. looked at her phone and saw that it was 2:11 a.m. J.A.W. did not remember anything else until her son woke her up later that morning. When J.A.W. woke up, she was lying on her back, naked, and covered by a robe. She tried to stand, but she was dizzy, disoriented, and found it difficult to walk. She observed her front door was unlocked. She then went into the bathroom and observed that it was in disarray, the floor was wet with water, and there were towels and clothes that did not belong to her. Later that day, J.A.W. went to the hospital and underwent a sexual assault evidence collection evaluation. She noticed at that time her legs and arms were bruised "pretty badly." She did not have these bruises prior to defendant's visit and did not know how she got them. Later, J.A.W. remembered defendant dragging her from the bathroom to the couch on the night of the incident.

¶ 6 The nurse who performed J.A.W.'s sexual assault examination testified J.A.W. told her that she consumed three shots of whiskey, an ibuprofen pill, and a tramadol tablet given to her by a friend on the evening of the incident. The nurse testified tramadol was a pain medication that should not be taken with alcohol because alcohol "heighten[ed] the effects" of

the medication. The nurse collected vaginal and anal swabs and observed J.A.W. had multiple bruises and scratches.

¶ 7    The State presented forensic evidence showing the vaginal and anal swabs collected during J.A.W.'s examination contained deoxyribonucleic acid (DNA) for which defendant could not be excluded as a contributor. With regard to the most complete male DNA profile, the likelihood that someone other than defendant was the contributor was 1 in 470 sextillion.

¶ 8    Malinda Vogel, a licensed clinical professional counselor, testified as an expert in the field of clinical psychology with training in the areas of trauma and post-traumatic stress disorder (PTSD). Vogel testified that the state's attorney's office referred J.A.W. to her for a psychological evaluation approximately two years after the incident occurred. During the evaluation, J.A.W. reported she had been raped. J.A.W. discussed the details of the sexual assault and indicated she did not remember some of the incident. According to Vogel, J.A.W.'s description of the sexual assault qualified as a traumatic event for purposes of a PTSD diagnosis. J.A.W. also described having the following symptoms of PTSD: intrusive experiences due to the sexual assault, avoiding things that reminded her of the sexual assault, negative changes in her mood, and changes in her level of physiological arousal. During her testimony, Vogel gave specific examples of each of these symptoms. Based on her evaluation, Vogel found the sexual assault had a severe impact on J.A.W.'s life. After considering all this information, Vogel concluded that J.A.W. suffered from PTSD. Vogel's evaluation report was admitted into evidence.

¶ 9    On cross-examination, Vogel stated she met with J.A.W. twice for one hour each time in conducting her evaluation. J.A.W. was her only source of information. Some of her

questions to J.A.W. specifically related to the symptoms of PTSD. She did not use any standardized assessment tools but rather used an interview and evaluation process, which she believed was the best way to approach the evaluation. Determining whether J.A.W. was a reliable reporter of events was part of the interview process. In assessing the reliability of a person's account, Vogel stated she considers whether there has been consistency in reporting, how the situation could be perceived by others, and whether the subject is psychotic or disoriented.

¶ 10　　　　Defendant testified that J.A.W. invited him to her house to use her shower on the night of the incident. She also asked him to bring her some pills for her back pain, and defendant brought her two ibuprofen tablets. Defendant and J.A.W. sat in her living room and talked for several hours. They both had two or three shots of whiskey. J.A.W. did not seem intoxicated. Defendant and J.A.W. then engaged in consensual sexual activities in both the shower and J.A.W.'s bedroom. Afterward, J.A.W. walked back to the couch and draped defendant's jacket over her. Defendant noticed the sun was starting to rise, and he told J.A.W. she needed to get up. They had a brief conversation, but J.A.W. did not get up. Defendant took his jacket and draped J.A.W.'s robe over her. He then left.

¶ 11　　　　The jury found defendant guilty of both counts, and the trial court imposed consecutive sentences of five years' imprisonment on each count.

¶ 12　　　　On direct appeal, defendant argued the State failed to prove him guilty beyond a reasonable doubt and the trial court erred by giving Illinois Pattern Jury Instruction, Criminal, No. 3.14 (approved Oct. 17, 2014). *People v. Hills*, 2021 IL App (4th) 200220-U, ¶ 2. We affirmed the judgment of the trial court. *Id.* ¶ 49.

¶ 13　　　　Defendant, through counsel, filed a postconviction petition alleging five claims of ineffective assistance of trial counsel. Specifically, defendant alleged trial counsel was ineffective in that he failed to (1) investigate Vogel's opinion that J.A.W. suffered from PTSD by consulting with a forensic psychologist to determine the validity of Vogel's opinion, (2) properly question the State's expert about her opinion that J.A.W. suffered PTSD after being sexually assaulted by defendant, (3) retain a forensic psychologist to interview J.A.W., (4) call a forensic psychologist to testify at trial that J.A.W. was not suffering from PTSD and was exaggerating her symptoms, and (5) introduce evidence of the effects of tramadol and alcohol, which do not include "blacking out, unconsciousness, or memory loss." Defendant alleged that each of these five failures or omissions constituted deficient performance and that a reasonable probability existed that the result of the proceeding would have been different but for each of these deficiencies.

¶ 14　　　　In the petition, defendant acknowledged Vogel's opinion testimony that J.A.W. suffered from PTSD was admissible under section 115-7.2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.2 (West 2018)). With regard to defendant's claim that his trial counsel was ineffective for failing to consult a forensic psychologist concerning Vogel's opinion that J.A.W. suffered from PTSD, the petition alleged that if counsel had consulted with a forensic psychologist, he would have discovered several problems with Vogel's evaluation and report, including (1) a lack of objectivity, (2) failure to perform objective tests, (3) lack of proper credentials for interpreting psychological tests, (4) "failure to provide verbatim examples of specific trauma-related symptoms" in the report, and (5) failure to use multiple sources of data in reaching her clinical opinion. In his second claim, defendant alleged that if counsel had consulted with a forensic psychologist, he would have been able to cross-examine Vogel concerning the

deficiencies in her evaluation. Defendant alleged the case was closely balanced and depended on J.A.W.'s credibility.

¶ 15        Defendant attached to his postconviction petition an opinion letter prepared by forensic psychologist Tetyana Kostyshyna. In the letter, Kostyshyna indicated defendant's postconviction counsel requested that she review a report of J.A.W.'s examination by Vogel as well as Vogel's trial testimony to examine the appropriateness of Vogel's methodology. Kostyshyna stated she reviewed these documents and found the following deficiencies in Vogel's evaluation: (1) Vogel's evaluation lacked objectivity because it did not include any tools to assist Vogel in "controlling her bias"; (2) Vogel failed to use objective psychological tests or structured clinical interviews, which assist in ensuring accuracy by measuring exaggeration of symptoms, minimization of symptoms, and inconsistent reporting; (3) Vogel lacked proper credentials for interpreting psychological tests; (4) J.A.W.'s verbatim examples of specific trauma-related symptoms were missing from the report; and (5) Vogel relied solely upon a partial clinical interview in making her diagnosis when multiple sources of information—*e.g.*, structured clinical interviews, mental status examinations, psychological tests, and validity measures—are required to reach a "confident clinical opinion."

¶ 16        In addition, defendant attached to his petition a printout from healthline.com concerning the side effects and uses of tramadol. The printout stated that common side effects of tramadol included dizziness, headache, drowsiness, nausea and vomiting, constipation, lack of energy, sweating, dry mouth, and itching. The printout also stated that the use of alcoholic beverages can increase the risk of certain side effects from tramadol, including slowed breathing, decreased heart rate, decreased blood pressure, and confusion.

¶ 17 The trial court entered an order summarily dismissing the postconviction petition. The court stated that defendant's direct appeal was the proper forum for all of his claims of ineffective assistance of trial counsel and that collateral review was consequently not available for defendant's claims. This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, defendant argues the trial court erred in summarily dismissing his postconviction petition because the court erroneously found defendant could have raised his claims of ineffective assistance of counsel on direct appeal. Defendant further contends he stated the gist of a constitutional claim with respect to all five of his claims of ineffective assistance of counsel raised in the petition.

¶ 20 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) sets forth a three-stage procedure for redressing substantial violations of a defendant's constitutional rights. *People v. Allen*, 2015 IL 113135, ¶¶ 20-21. At the first stage of postconviction proceedings, the trial court independently reviews the postconviction petition and shall dismiss it if it determines the petition is frivolous or patently without merit. *People v. Boykins*, 2017 IL 121365, ¶ 9; 725 ILCS 5/122-1(a)(1) (West 2020). If the petition is not summarily dismissed, it advances to the second stage, where the court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the defendant makes the requisite substantial showing of a constitutional violation at the second stage, the matter advances to a third-stage evidentiary hearing. *Id.* ¶ 34.

¶ 21 In the instant case, the postconviction petition was dismissed at the first stage of postconviction proceedings. At this stage, the trial court may dismiss the petition as frivolous or

patently without merit "only 'if the petition has no arguable basis either in law or in fact'—relying on 'an indisputably meritless legal theory or a fanciful factual allegation.' " *People v. Allen*, 2015 IL 113135, ¶ 25 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). "The allegations of the petition, taken as true and liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010). "This standard presents a 'low threshold' [citation], requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *Id.* "A postconviction petition alleging ineffective assistance of counsel may not be dismissed at the first stage of the proceedings if: (1) counsel's performance arguably fell below an objective standard of reasonableness; and (2) the petitioner was arguably prejudiced as a result." *Id.* at 185.

¶ 22        A trial court may summarily dismiss a postconviction petition at the first stage on the basis that the issues in the petition are procedurally defaulted because they could have been raised on direct appeal but were not. *People v. Harris*, 224 Ill. 2d 115, 137 (2007). A defendant must generally raise a claim of ineffective assistance of counsel on direct review or risk forfeiting the claim. *People v. Veach*, 2017 IL 120649, ¶ 47. However, a defendant is not precluded from raising an issue on collateral review that depended upon facts not found in the record. *Id.* Accordingly, claims of ineffective assistance of counsel are better suited to collateral proceedings "when the record is incomplete or inadequate for resolving the claim." *Id.* ¶ 46.

¶ 23        Here, defendant's postconviction petition met the low threshold of stating the gist of a claim that his trial counsel was ineffective for failing to investigate Vogel's opinion that J.A.W. suffered from PTSD by consulting with a forensic psychologist. In the petition, defendant asserted that if his counsel had consulted with a forensic psychologist, he would have discovered five specified problems with Vogel's evaluation and report. Defendant also alleged that counsel

could have challenged Vogel's evaluation by cross-examining her concerning these deficiencies. In support of this claim, defendant attached to his petition Kostyshyna's opinion letter, which identified five deficiencies in Vogel's evaluation. Defendant alleged that the evidence in the case was closely balanced and the case turned on the credibility of J.A.W.

¶ 24 Based on the foregoing allegations in the petition and Kostyshyna's letter, we find trial counsel's alleged failure to consult with a forensic psychologist concerning Vogel's evaluation arguably constituted performance falling below an objective standard of reasonableness. It is also arguable that if defendant had been able to challenge the validity of Vogel's PTSD diagnosis by presenting evidence of the deficiencies in her examination or through a stronger cross-examination, J.A.W. would have been viewed by the jury as a less credible witness and the result of the proceeding would have been different.

¶ 25 In reaching our holding, we reject the position of both the trial court and the State on appeal that defendant's ineffective assistance claim could have been raised on direct appeal. The claim was based on information not contained in the trial record—namely, Kostyshyna's opinion letter, which was procured by postconviction counsel after the trial proceedings had concluded. Without this letter, defendant would not have been able to support his claim that he was arguably prejudiced by his trial counsel's failure to consult with a forensic psychologist concerning Vogel's report because there would have been no basis in the record for concluding that there were any deficiencies in her evaluation. We find the trial record would have been inadequate for resolving this claim of ineffective assistance of counsel on direct appeal, and thus the claim was properly raised in a postconviction petition. See *Veach*, 2017 IL 120649, ¶ 47.

¶ 26 Because we have found that defendant stated the gist of a constitutional claim as to one of the claims in the petition, we need not consider whether the other claims in the petition

should have survived first-stage review. This is because partial summary dismissals are not permitted. *People v. Rivera*, 198 Ill. 2d 364, 371 (2001). Rather, "if some claims are subject to a dismissal at the first stage while others are not, the entire postconviction petition must be docketed for second-stage proceedings." *People v. Johnson*, 377 Ill. App. 3d 854, 858 (2007).

¶ 27                                    III. CONCLUSION

¶ 28            For the reasons stated, we reverse the summary dismissal of defendant's postconviction petition and remand the matter for second-stage postconviction proceedings.

¶ 29            Reversed and remanded.