2026 IL App (1st) 242483-U

FIRST DIVISION
April 27, 2026

No. 1-24-2483

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 3645 |
| | ) | |
| KENNETH MAYS, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County granting the State's motion to dismiss defendant's petition for postconviction relief is affirmed. Defendant was not prejudiced by appellate counsel's failure to raise the issue of the trial court's denial of the motion to suppress defendant's inculpatory statement to police. The issue, had it been raised on appeal, was unlikely to have succeeded. As a result, defendant's claim of ineffective assistance of appellate counsel fails.

¶ 2    Following a jury trial, the circuit court of Cook County convicted defendant, Kenneth

Mays, of unlawful use of a weapon by a felon (UUWF) and armed habitual criminal (AHC), and

sentenced defendant for both convictions to a concurrent term of 30 years' imprisonment. The

jury found defendant not guilty of attempt (first degree murder). The charges arose from an

incident in which defendant allegedly placed a gun to the victim's head and pulled the trigger.

Fortunately for the victim, the gun did not fire. The victim is the mother of two children fathered by defendant. Later, the Chicago Police Department arrested defendant in his mother's apartment and searched the apartment with his mother's consent, and seized a handgun. After his arrest defendant made an inculpatory statement claiming ownership of the gun.

¶ 3    In 2013 defendant filed a *pro se* petition for postconviction relief which advanced to second-stage proceedings. Appointed postconviction counsel filed a supplemental postconviction petition and the State filed a motion to dismiss. The trial court granted the motion. On appeal, defendant challenges only the dismissal of his claim that appellate counsel was ineffective for failing to challenge the denial of his motion to suppress his inculpatory statement.

¶ 4    For the following reasons, we affirm.

¶ 5                                    BACKGROUND

¶ 6    This is the second time this matter is before us. *People v. Mays*, 2012 IL App (1st) 102013-U, ¶ 4 (*Mays I*). On direct appeal, this court focused its background discussion on defendant's attempts to represent himself at trial. *Id*. ¶¶ 4-6. That matter is not an issue in this appeal. Here, we focus on defendant's attempts to suppress his inculpatory statement to police.

¶ 7    Defendant initially filed a motion to suppress the handgun seized from defendant's mother's apartment based on an allegedly unlawful search. Chicago Police Department officers discovered defendant hiding in a closet then found the handgun beneath a clawfoot bathtub approximately 20 feet from defendant's hiding place. At the January 28, 2009 hearing on the motion to quash arrest and suppress evidence, Officer Green testified that other officers were searching the apartment, and that after defendant was placed under arrest and after the weapon was located, Officer Green provided "defendant with his rights per *Miranda*." Officer Green

testified that after he "read him his rights" defendant "made a statement implicating himself in the ownership of the gun" at the police station.

¶ 8    On February 25, 2009, defendant filed a motion to suppress all defendant's statements "prior to, at the time of, or subsequent to his arrest." Defendant's motion specifically referenced defendant's statement to Officer Green at the police station after defendant's arrest, and argued that defendant was not informed of his rights under *Miranda*.

¶ 9    At the April 8, 2009 hearing on defendant's motion to suppress statements, Officer Green testified that after he placed defendant under arrest, while still in defendant's mother's apartment, he "[r]ead [defendant] his rights, *Miranda* Rights." Green's partner, Officer Lyke, was present when Green read defendant his rights. Officer Green read defendant his rights from his "FOP book." Neither Officer Green nor Officer Lyke gave defendant a form to sign to acknowledge that defendant received his *Miranda* rights. Officer Green did not have a conversation with defendant at the scene, but he did have a conversation with defendant at the police station. Lyke was present for that conversation. Officer Green testified that he did not re-read the *Miranda* rights to defendant before their conversation at the police station and neither he nor Office Lyke had defendant sign a written acknowledgment of having received his *Miranda* warnings at that time.

¶ 10    At the hearing Officer Green demonstrated the way in which he read defendant his rights at the time of defendant's arrest. Officer Green testified that he read defendant a portion of his rights under *Miranda*—that defendant had the right to remain silent, that anything he said may be used against him, and if he understood that he has the right to a lawyer before police ask him any questions—and he asked defendant to respond. Officer Green testified that defendant responded, out loud, "yeah man." Officer Green testified that he continued reading defendant his rights,

concluding with, " 'Do you understand each of these rights?' " Officer Green testified that after he read the last statement he asked defendant if he understood those rights, and defendant responded, "yeah." Green then asked defendant if defendant wished to answer any questions and defendant "said, yeah, anything;" but the officers did not ask defendant any questions at that time.

¶ 11    At that point, other officers transported defendant to the police station, where Green and Lyke began "processing" defendant in the tactical office. While Officers Green and Lyke were processing defendant, Officer Green asked defendant where he got the gun. Defendant stated he got the gun from a drug dealer on the west side named O.J. Green did not ask defendant any further questions.

¶ 12    The defense did not call any additional witnesses. Defendant's attorney argued that "there's a time gap between the time *Miranda* was allegedly read to [defendant]," and that there had "been no corroboration *** in writing that in fact this had been delivered to [defendant.]" The trial court denied defendant's motion. The court stated: "The only evidence before this court is from Officer Green who says that he did in fact advise the defendant of his *Miranda* Rights, that the defendant acknowledged understanding them and waived them and based on the evidence the motion is denied."

¶ 13    This court briefly summarized the evidence presented at trial in defendant's direct appeal, writing, in part, as follows:

> "[T]he evidence presented at trial established that on January 17, 2007, at approximately 10 a.m., defendant held a gun to the head of his ex-girlfriend, Cequita Hill, and pulled the trigger, but the gun misfired. A few hours later, Hill directed police to defendant's mother's house where a loaded handgun

was recovered from under a bathtub. Defendant, who was present, was arrested. The State entered certified copies of two of defendant's prior convictions, *** for possession of a controlled substance with intent to deliver and *** for unlawful use of a weapon by a felon. Defendant was subsequently acquitted of attempted murder but convicted of unlawful use of a weapon by a felon and of being an armed habitual criminal." *Mays I*, 2012 IL App (1st) 102013-U, ¶ 7.

¶ 14    Officer Green testified at defendant's trial that upon searching defendant's mother's apartment Officer Green discovered defendant beneath a pile of clothing in a closet. Officer Green had defendant come out and asked his name. Defendant gave his name and, "At that point, I—and he made a statement, I didn't do nothing to that girl." Officer Green placed defendant in handcuffs after which, Officer Green testified, "I read him his rights." Green testified that he read defendant's rights from his "FOP book" and that Officer Lyke was present when Green read the rights to defendant. Officer Green asked defendant, "do you understand these rights I read you?" and defendant responded, "yeah, man." Officer Green did not ask defendant any questions at that time. Officer Green later testified that other officers transported defendant to the "tactical office" at the police station where Officer Crowder placed the gun seized from defendant's mother's apartment on a desk. At that time, Green testified he, Officer Crowder, and Officer Lyke were present, and Green "asked the defendant questions." Green testified, "I asked the defendant where did he get the gun from." Green testified, "He said he got the gun on the west side on Central Park and Polk, and from a guy named O.J. who sells drugs and guns in the area." Green testified that he did not ask defendant any further questions. Defendant's attorney did not object to Green's testimony.

¶ 15 On cross-examination, defendant's attorney asked Officer Green about defendant's statement and whether Officer Green "ever follow[ed] up with any questions to [defendant] about who O.J. was or where to find him?" Defendant's attorney questioned Officer Green about whether the police investigated "O.J." Green testified that Officer Lyke did not investigate "O.J.," but Green did not know whether or not Officer Crowder did. Defendant's attorney also asked whether Officer Green had defendant write his statement down, or have it transcribed, or made an audio recording, none of which Officer Green did. At trial, the State called Officer Lyke as a rebuttal witness. Defendant's attorney did not ask Officer Lyke any questions regarding Officer Green reading *Miranda* warnings to defendant or defendant's statement at the police station.

¶ 16 Defendant filed a motion for a new trial arguing, in relevant part, that the trial court erred in denying defendant's motion to suppress statements. This court affirmed defendant's convictions and sentence and entered an order merging the conviction for UUWF into the conviction for AHC. *Mays I*, 2012 IL App (1st) 102013-U, ¶ 42.

¶ 17 On July 18, September 18, and October 24, 2013, defendant filed separate *pro se* petitions for postconviction relief. Defendant's initial *pro se* petition challenged defendant's statement to police and defendant raised the issue again in his October 24th petition, alleging that defendant refused to speak to police and that he signed a paper documenting that refusal. On December 23, 2013, defendant filed a Motion to Include Affidavits with his postconviction petitions. In his affidavits defendant again complained about his statement to police, alleging that counsel failed to call police witnesses for the hearing on his motion to suppress statements who allegedly "could show verification I refused to talk to them;" and defendant complained that his appellate counsel failed to argue constitutional errors.

¶ 18    Defendant's petition advanced to the second stage and the trial court appointed counsel to represent defendant in postconviction proceedings.

¶ 19    On July 8, 2022, when defendant was represented by postconviction counsel, defendant filed, *pro se*, a "Motion to Amend" to "add issues and the rest of my postconviction to the case." In pertinent part, defendant's motion complained that police questioned him without giving him his rights, that defendant requested a lawyer prior to questioning, and that direct appeal counsel was ineffective in failing to raise these and other issues. Defendant wrote:

> "Officer Andre Green star # 15855 arrested Walter Wallace & Kenneth Mays on 1/17/07 on that date officer Andre Green said I made a oral statement without reading me my rights, officers didn't read me my rights and so the officers made a false claim saying I made a statement, or didn't inform me that I had a right to remain silent or it can be used against me in court. I told the officer I want a lawyer present. This officer violated my fourth, fifth, sixth and fourteenth amendments to the Constitution of the State of Illinois."

> "On direct appeal my attorney didn't argue these issues therefore waiving my rights to a good appeal ***."

¶ 20    On August 28, 2023, defendant's appointed postconviction counsel filed a supplemental postconviction petition that incorporated defendant's prior *pro se* claims. The supplemental petition pointed out that defendant's *pro se* petitions included, but were not limited to, five specific claims, including that defendant "was denied due process and a fair trial when the court denied [defendant's] Motion to Suppress Evidence in that members of the Chicago Police Department entered [defendant's mother's] residence without her consent." Appointed postconviction counsel did not specify defendant's independent postconviction claim that police

questioned him without providing the warnings required by *Miranda*. The supplemental petition argued that defendant's "claims listed above are a matter of record and could have and should have been raised on appeal."

¶ 21 On September 26, 2023, the State filed a motion to dismiss defendant's petition for postconviction relief. After full briefing by the parties and oral argument on the motion to dismiss, on December 14, 2024, the trial court issued a written order. The trial court wrote, in part:

"[the] claim that defendant made a statement without being advised of *Miranda* rights was made and litigated in a pre-trial motion. An officer testified at trial as to circumstances of defendant's statement. Claim of ineffective assistance of appellate counsel for not raising this issue on appeal fails; there is no reasonable probability it would have succeeded on direct appeal. In addition to determining the officer was credible, [defendant] would be impeached by use of different names dates of birth, social security numbers, and felony convictions."

¶ 22 The trial court found that defendant "failed to make a substantial showing of violation of a constitutional right." The court found there was no reasonable probability the result on appeal would have been different had these claims been raised on direct appeal and that "no prejudice has been shown." The court granted the State's motion to dismiss.

¶ 23 This appeal followed.

¶ 24 ANALYSIS

¶ 25 The sole issue on appeal is whether the trial court's judgment granting the State's motion to dismiss defendant's petition for postconviction relief should be reversed because the petition makes a substantial showing that defendant received ineffective assistance of counsel on direct

appeal where direct appeal counsel failed to raise a claim that the trial court erred in denying defendant's motion to suppress his statement to Officer Green following his arrest. "Under the procedural framework of the [Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022))] there are three stages of postconviction proceedings. [Citation.]" *People v. Harris*, 2025 IL 130351, ¶ 32. "If the petition is not dismissed at the first stage, it advances to the second stage, where *** counsel *** may amend the petition as necessary, and the State may file a motion to dismiss ***." *Id.* "To survive dismissal at the second stage, a petition and any accompanying documentation must make a substantial showing of a constitutional violation. [Citation.] The defendant's claims must be liberally construed in light of the trial record, and all factual allegations not positively rebutted by the record are accepted as true." *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 23 (citing *People v. Bailey*, 2017 IL 121450, ¶ 18; *People v. Hall*, 217 Ill. 2d 324, 334 (2005)). "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage ([citation]) is a measure of the legal sufficiency of the petition's well-pled allegations ***, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35. "If the petitioner makes the requisite showing, the petitioner is entitled to a third-stage evidentiary hearing." *Harris*, 2025 IL 130351, ¶ 33. "We review a trial court's dismissal of a postconviction petition at the second stage *de novo*." *People v. Addison*, 2023 IL 127119, ¶ 17.

¶ 26    "A claim of ineffective assistance of counsel on appeal is cognizable under the [Act.] [Citation.] Claims of ineffective assistance of counsel [on appeal] are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 32 (citing *People v. Childress*, 191 Ill. 2d 168, 175 (2000)). "[A] defendant must demonstrate that counsel's performance was deficient and that such deficient performance

substantially prejudiced defendant." *Dixon*, 2022 IL App (1st) 200162, ¶ 32. "[I]neffectiveness claims can be disposed on the prejudice prong alone, without establishing whether counsel's performance was deficient." *People v. Garcia*, 405 Ill. App. 3d 608, 617 (2010). "Unless the underlying issue is meritorious, [the defendant] suffered no prejudice from counsel's failure to raise it on direct appeal." *Id*. (citing *Childress*, 191 Ill. 2d at 175). "Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue." *People v. Scott*, 2011 IL App (1st) 100122, ¶ 28. The defendant must demonstrate that the underlying issue was meritorious and that "this court would have found as such had appellate counsel raised the issue on direct appeal." *People v. Jones*, 362 Ill. App. 3d 31, 35 (2005) (citing *People v. Patterson,* 192 Ill. 2d 93, 112 (2000)). "[I]t is not incompetence of counsel to refrain from raising issues which, in [appellate counsel's] judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *** Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference." *Scott*, 2011 IL App (1st) 100122, ¶ 28.

¶ 27   In this case, the "underlying issue" is the trial court's ruling on defendant's motion to suppress statements "in which," defendant states, he "asserted that police improperly obtained an inculpatory statement from [defendant] without giving him *Miranda* warnings ***." "As a guard against self-incrimination, statements made in response to custodial interrogation must be suppressed unless they are preceded by *Miranda* warnings." *People v. Mora*, 2023 IL App (2d) 210653, ¶ 41. "[I]t is the State's burden to establish by the preponderance of the evidence that the [inculpatory statement was] voluntary." *People v. Caballero*, 102 Ill. 2d 23, 33 (1984) (citing now 725 ILCS 5/114-11 (West 2008)); *People v. Costa*, 38 Ill. 2d 178, 183 (1967) ("the references in section 114-11 to an 'involuntary' confession *** must be read as embracing the constitutional standards that govern admissibility. Similarly, the word 'confession' must be read

to include *** inculpatory *** statements"). "This includes proof that defendant made a knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. [Citations.] This determination is made from the totality of the circumstances ***." *People v. Teran-Cruz*, 272 Ill. App. 3d 573, 579 (1995).

¶ 28     On appeal from a ruling on a motion to suppress statements, "we [would] apply a bifurcated standard of review ***: deference to the trial court's credibility determinations and findings of fact, under a manifest-weight standard, and *de novo* review on questions of law, including the ultimate question of whether the statement(s) should be suppressed." *People v. Tucker*, 2022 IL App (1st) 172982, ¶ 36. "A trial court's factual finding is against the manifest weight of the evidence only if it is unreasonable, arbitrary, or not based on the evidence presented, or if the opposite conclusion is clearly evident" (*People v. Cox*, 2023 IL App (1st) 170761, ¶ 42), or "there is no evidence in the record to support the conclusion reached by the circuit court" (*People v. Morgan*, 2025 IL 130626, ¶ 75 (Overstreet. J., specially concurring)). "Where there exists 'any evidence in the record' to support a finding, an opposite conclusion is not clearly evident." *Jimenez v. Department of Financial & Professional Regulation, Division of Professional Regulation*, 2020 IL App (1st) 192248, ¶ 27.

¶ 29     Defendant argues that, "[b]ecause an appellate challenge to the [trial] court's ruling on the suppression [motion,] had it been made, would have been premised on the [trial] court's credibility determinations, [defendant's] instant argument involves an implicit assertion that the trial court's credibility determination was manifestly erroneous." Defendant argues that the trial court's ruling rests entirely on the credibility of Officer Green's testimony, and, in light of the totality of the circumstances, Officer Green's testimony that he provided defendant with *Miranda* warnings in defendant's mother's apartment was not credible. Namely, defendant

points out the absence of corroborative testimony by other officers who were present, the lack of documentation that defendant was informed of his rights, the fact police did not re-warn defendant at the police station, and the contrast to the procedures police used regarding defendant's mother's consent to search her apartment (*i.e.*, a signed document witnessed by two other officers). Defendant argues that the failure to ensure corroboration and documentation of *Miranda* warnings gives rise to "a sufficiently strong possibility" that Green was "lying about having given *Miranda* warnings," and "calls Green's overall credibility into question," such that "the trial court should have suppressed [defendant's] self-incriminating statements under the applicable preponderance of the evidence standard." See *People v. Slater*, 228 Ill. 2d 137, 149 (2008) ("Where a defendant challenges the admissibility of a confession through a motion to suppress, the State bears the burden of proving the confession was voluntary by a preponderance of the evidence. 725 ILCS 5/114–11(d) (West 2002).").

¶ 30    The State argues that defendant cannot show that the trial court's ruling was manifestly erroneous. Therefore, any challenge to that ruling on appeal would have been fruitless, and defendant has failed to make a substantial showing that he received ineffective assistance of appellate counsel because "defendant cannot establish the requisite prejudice prong." The State argues that the trial court's finding that Officer Green credibly testified that he "*Mirandized*" defendant is supported by the record, as demonstrated by the consistency in his testimony across two pretrial hearings and the trial and the absence of any impeachment or contradiction of Officer Green's testimony. The State argues that it was not required to present corroborating testimony; nor is evidence of a written waiver required, therefore, the absence of a *Miranda* form does not undermine Officer Green's credibility.

¶ 31    Upon review, we conclude that defendant has not demonstrated a substantial showing that appellate counsel's omission in challenging the trial court's decision to deny his motion to suppress the statement resulted in prejudice. Specifically, there is no evidence indicating that the trial court's determination regarding the credibility of Officer Green, and its subsequent order denying suppression, was manifestly erroneous. As a result, defendant is unable to establish a substantial showing of ineffective assistance of appellate counsel. Without a meritorious underlying claim, there can be no prejudice from appellate counsel's decision not to pursue this issue, and, therefore, the requirements for relief under the Act are not met. *Gallano*, 2019 IL App (1st) 160570, ¶ 23, *Garcia*, 405 Ill. App. 3d at 616-17.

¶ 32    It is not unreasonable to find that Officer Green testified credibly in spite of the fact the State called only one witness—the witness who actually provided the warnings—to testify that defendant received the *Miranda* warnings. "The State is not required to call all material witnesses to testify at the suppression hearing *** if it can meet its burden of proving the confession voluntary without such testimony." *People v. R.D.*, 155 Ill. 2d 122, 144-45 (1993). We recognize that defendant does not invoke the defunct "material witness rule;" nonetheless, we note our supreme court's reasoning in repudiating that rule as supporting the conclusion that the absence of corroborating witnesses does not necessarily negatively impact the credibility or sufficiency of the testimony of one witness who knows the *most* "about what had taken place" regarding the circumstances surrounding an inculpatory statement. Compare *R.D.*, 155 Ill. 2d at 134 (discussing genesis of the material witness rule), 145 ("The defendant may not claim, however, that the trial court's ruling on a motion to suppress must be reversed simply because the State failed to call a material witness to testify at the suppression hearing."). Nor does Officer Green's failure to document the giving of the warnings call his credibility into question where no

such documentation was required. The State is correct that the court has found that an express written waiver of fifth amendment rights is not necessary to establish waiver. *People v. Costillo*, 240 Ill. App. 3d 72, 78 (1992) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

¶ 33    We now address defendant's argument regarding the re-administering of *Miranda* warnings. Defendant does not contend that police were obligated to re-warn him of his *Miranda* rights due to any lapse in time between his arrest and subsequent interrogation at the police station. Rather, defendant asserts that Officer Green's failure to re-warn him casts doubt upon the credibility of Green's testimony concerning the initial administration of *Miranda* warnings at the time of arrest.

¶ 34    This argument is unpersuasive. Established precedent holds that it is generally accepted that fresh *Miranda* warnings are not required simply because several hours have passed; instead, new warnings are only mandated when circumstances indicate a substantial probability that the original warnings have become so stale and remote that the suspect may no longer be aware of his or her constitutional rights at the time of subsequent interrogation. See *People v. Garcia*, 165 Ill. 2d 409, 425-26 (1995). Defendant's suggestion implies that if Officer Green genuinely administered *Miranda* warnings at the time of arrest, he would have repeated them at the police station. However, this inference lacks support. In the present case, there is no indication that the warnings provided immediately after defendant's arrest became stale or remote during the brief interval required to transport defendant to the police station. Therefore, there was no substantial possibility that defendant was unaware of his rights when he made his statement at the station, and new warnings would not have been anticipated or required under the circumstances. Officer Green's omission in re-administering *Miranda* warnings does not undermine the credibility of his initial testimony. The assessment of whether defendants understand their constitutional rights

during post-*Miranda* warning interrogations must be based on the totality of the circumstances, not solely on the repetition of warnings. *Garcia*, 165 Ill. 2d at 426.

¶ 35    Finally, defendant argues that the "phenomenon of police lying in the context of the exclusionary rule has been recognized by courts of review and by legal scholarship." In reply, defendant clarifies that the purpose of that argument "was to demonstrate the importance, for purposes of the trial court's credibility determination, that police document and corroborate actions or statements that explicitly or implicitly result in a waiver or forfeiture of a defendant's constitutional rights." We cannot dispute that corroboration and/or documentation could have bolstered the credibility of Officer Green's testimony that he provided defendant with *Miranda* warnings—which is what defendant suggests. However, it is also indisputable that such evidence is not necessary for this court to find that the trial court's credibility determination is not against the manifest weight of the evidence, notwithstanding any allegations of a possible incentive to lie in suppression cases. See *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 26 (discussing "the largest group of cases" addressing whether the exclusionary rule encourages police to lie to avoid suppression as "recognizing the testimony in each individual case must be evaluated for its own credibility" (citing, *inter alia*, *United States v. Contreras*, 820 F.3d 255, 267 (7th Cir. 2016) (" 'Skepticism, however, does not suffice to supersede the trial court's credibility determination.' "))).

¶ 36    We find that the trial court properly found that Officer Green's testimony satisfied the State's burden to prove that defendant received *Miranda* warnings. Based on the totality of the circumstances we cannot say that "there is no evidence in the record to support the conclusion reached by the circuit court." *Morgan*, 2025 IL 130626, ¶ 75 (Overstreet. J., specially concurring). Officer Green provided consistent testimony at the pretrial hearings and at trial as to

when and how he provided defendant with the *Miranda* warnings. *Slater*, 228 Ill. 2d at 149 ("[I]t is proper for us to consider the testimony adduced at trial, as well as at the suppression hearing."). "It is the function of the circuit court in a hearing on a motion to suppress to determine the credibility of the witnesses and to resolve any conflict in their testimony ([citation]), and a reviewing court may not substitute its judgment as to *** the credibility of the witnesses." *In re J.C.*, 260 Ill. App. 3d 872, 882 (1994). The trial court's credibility finding is not against the manifest weight of the evidence because, as demonstrated above, there is evidence in the record to support Officer Green's credibility, it is reasonable to conclude that Green did not lie about giving defendant *Miranda* warnings, and it is not clearly apparent that Green did lie.

¶ 37    We find that defendant was not prejudiced by appellate counsel's decision not to raise the issue of the trial court's denial of defendant's motion to suppress his statement after arrest because such an argument would have been meritless. Because we resolve defendant's argument that the trial court erred in granting the State's motion to dismiss his postconviction petition claiming ineffective assistance of appellate counsel based on the absence of prejudice, we have no need to address direct appeal counsel's alleged "lack of any evident strategic rationale for not raising [the] issue;" *i.e.*, whether direct appeal counsel's performance was deficient. *Garcia*, 405 Ill. App. 3d at 617 ("ineffectiveness claims can be disposed on the prejudice prong alone, without establishing whether counsel's performance was deficient."), *People v. Manning*, 241 Ill. 2d 319, 327 (2011) ("to establish deficient performance, the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy").

¶ 38                                          CONCLUSION

¶ 39    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

1-24-2483

¶ 40    Affirmed.